## In the Court of Common Pleas of Juniata County.

### COMMONWEALTH v. JOHN CONWAY.

The coaling of locomotives, engaged in transporting live stock, on Sunday, being a work of necessity and charity, is excusable.

Opinion delivered by

JUNKIN. P. J. The defendant was convicted under the act of 22d April, 1874, for performing worldly employment on Sunday, and the record is before us on certiorari. The worldly employment consisted in coaling locomotives at Patterson Station, Juniata county, on 26th of July, 1874; and which locomotives were drawing trains of cars loaded with live stock, cattle, hogs, &c. The trains had left Pittsburgh on the afternoon of Saturday, and had reached Patterson on the morning of the 26th where arrangements exist for coaling engines, and defendant was an employee of the Railroad Company.

It is shown very clearly, that stock trains cannot lie by for twenty-four hours, without serious injury to the stock, there being no provision for feeding and watering within the cars, and the motion of the train is in itself, diversion and relief (by arresting attention) to the animals as they are not nearly so restive, as when the train is standing.

It is also shown that no stock yards exist at Patterson capable of accomodating a train load of cattle, and that none short of Harrisburg do : that to deliver them into fields for watering and feeding, would require

a large force of men, and occupy much time, and generally cannot be done at all. Here then, we have the conditions under which this worldly labor was performed; over two thousand head of live stock, in cars, could not be fed, could not be watered, could not even lie down, without food or drink since Saturday noon, with no yards at Patterson capable of holding them, and no force to handle them, with no chance of relief until Harrisburg was reached; under these circumstances the defendant coaled the engines which were speeding these brutes to relief and rest, and he is sued for the penalty prescribed by the Sunday act of 1794. Should or can he be made liable, under the circumstances? We think not, and might rest this opinion on the statament oi the facts alone. He did not start the trains nor order them to run; he found them there, recognized the necessity of their running on, until a point could be reached where this suffering mass of animal life could be relieved, and his labor in coaling the engines, in no wise differed from the recognized duty of pulling the ox out of the pit, on the Sabbath day. What he did is covered by both necessity and charity.

The common law is silent as to the observance of Sunday—the English people exercised worldly callings on that day, but much of the day was given to games and pastimes, and this continued until after the Reformation. Plays were performed on that day at the Court of Elizabeth, and Charles I. The first restrictive statute was the 27th, Henry, VI, c. 5 which forbid fairs and markets, except the four Sundays in harvest. The 1, Charles I, c. 1, forbid sports and games, and the 3, Charles I. c. 1, forbid carriers, wagonmen, and drovers travelling, and butchers from killing; the 29th Charles 11, c. 7 forbid the exercise of worldly labor, business, or work of ordinary callings on the Lord's day (works of necessity and charity only excepted) and section 3, allowed the dressing of meat in families, in inns, cookshops, and victualling houses, and crying milk before nine, and after four o'clock.

The framers of the act of 1794, when excepting works of "necessity and charity," without defining the works themselves, saw plainly that they were using terms, which, in the distant future, would meet the advance of the race, the changed conditions of the people, and cover acts unavoidable in their new relations. Indeed, lest too rigid a construction might be given to the words in their own day, remembering that under the Mosaic law, not even a fire could be kindled on the Sabbath day, Exodus xxxv., 3, the act expressly sanctions the dressing of vituals in private and public houses, the ferrying of passengers, and the delivery of milk before nine o'clock, a. m., and after five, p. m., showing how liberal were their views of the necessity of some things. Even then they well knew that furnaces, glass works and many other industrial pursuits could not be entirely suspended on the Sabbath day, and these have

gone on without question ever since. The word necessity in its comprehensive signification, meets all the unavoidable requirements of the present advanced age. Had the ancient lawmakers been permitted to see the future (they had only a prophetic vision of coming time), and realized a graded iron road from ocean to ocean, with its tens of thousands of vehicles, and its ponderous engines passing with tireless energy, night and day, with miles and miles of valuable products *en ront?* for the great centres of trade, with armies of travelers, at every point of the great thoroughfare, is it to be supposed that they would have asked this stream of life and trade to halt at the dead hour of midnight, wherever found, and wait until the Sunday passed, when they themselves refused to forego milk and dressed vituals? But they have done all that could be expected, or even asked, when they excepted works of necessity and charity, terms broad enough to meet all the contingencies that may ever arise in the history of the race. What the defendant did was both a necessity and charity, and like the lock-tender in Commonwealth v. Murray, 12 Harris, 290, who opened the gates to permit the travellers to pass on their way, and was held guiltless before the law, so here, the coaling of the engines permitted the suffering animals to pass to relief and safety ; a work of both necessity and charity, and he is excused.