## Commonwealth v. Carros.

*Sunday law—Selling ice cream on Sunday—Work of necessity—Criminal law—Act of April 22, 1794.*

1. The sale of ice cream on Sunday by a shopkeeper is not a violation of the Sunday law of April 22, 1794, 3 Sm. Laws, 177.

2. Ice cream is a food and has become at the present time a necessity.

3. The law regards that as necessary that which the common sense of the country, in its ordinary mode of doing business, regards as a necessity.

4. By work of necessity is meant any labor or work which is morally fit or proper to be done on Sunday under the circumstances of the particular case.

5. A work of necessity does not depend on conditions or situations as they existed in 1794.

6. The "serving of victuals" embraces the serving of ice cream to a customer.

7. A shop where sandwiches, coffee and ice cream are for sale is a "house of entertainment" within the meaning of the act.

8. The words "sojourners, travelers and strangers," as used in the act, do not exclude citizens or residents of the locality.

Appeal from summary conviction for selling ice cream on Sunday. Q. S. Union Co., Sept. Sess., 1923, No. 3.

*Harry M. Showalter*, Borough Solicitor, and *C. C. Lesher*, District Attorney, for Commonwealth.

*E. M. Beale* and *Charles M. Clement*, for defendant.

POTTER, P. J., Aug. 10, 1923.—In this case the defendant was arrested on a criminal warrant charged with having, on July 1, 1923, being Sunday, sold for money candy called Life Savers and ice cream, contrary to the provisions of the Act of April 22, 1794, 3 Sm. Laws, 177. He was given a hearing before the justice of the peace, was convicted of the charges and was fined the sum of $4, as is provided by the act, and the costs. He then petitioned the court for an *allocatur*, which was allowed, and his appeal from the conviction and sentence of the justice of the peace was filed, which we now have before us for disposition.

This prosecution was brought under and by virtue of the Act of April 22, 1794, 3 Sm. Laws, 177, which in the main, and so far as concerns this case, is as follows: "If any person shall do or perform any worldly employment or business whatsoever on the Lord's day, commonly called Sunday (works of necessity and charity only excepted): . . . Provided, always, that nothing herein contained shall be construed to prohibit the dressing of victuals in private families, bake-houses, lodging-houses, inns and other houses of entertainment for the use of sojourners, travelers or strangers. . . ."

As regards the alleged sale of candy, Sarah Slack, the girl to whom the defendant is charged with selling it, says she took the candy, that the defend-

Commonwealth *v.* Carros.

ant sold her a pint of ice cream for 30 cents and gave her the package of candy called Life Savers. This testimony is not contradicted. It must, therefore, be accepted as true, and if any of the convictions of this defendant are based on the sale of candy, they are reversed.

As regards the sale of ice cream, it is not denied by the defendant. He admits he sold it on Sunday, but claims the sale of it was not unlawful, which brings us to consider the Act of 1794, which at times bears the distinguished appellation of one of the blue laws.

The expression "worldly employment or business" distinguishes the employment from that pertaining to religious uses or employment, or things done to further ends of religious life and service. It is very evident that "worldly" is contrasted with religious, and worldly employments are prohibited for religious ones. Therefore, the act forbids no religious employments. Hence, funerals, as religious rites are allowed on Sundays, and all the functions of undertakers, grave diggers, hearse and carriage drivers and others, though such persons use such employments as a means of livelihood. While purely civil contracts are forbidden on Sundays, marriage is not so, because it is not purely a civil, but also a religious contract. It has been held lawful for a hired domestic to drive his master and family to church on Sunday, even though the driver was employed while so doing: Com. *v.* Nesbit, 34 Pa. 398.

The exception provided by the act is to "works of necessity and charity." The alleged offences herein charged against this defendant cannot in any manner relate to works of charity, unless it might be to furnish, gratuitously, ice cream to a sick person; but that is not the case here. It was sold to a well, healthy girl, sixteen years old, on Sunday, for money. And this leads us next to inquire whether or not it was a necessity.

Necessity, itself, is totally incapable of any sharp definition. In 29 Cyc., 379, it is defined as follows: "Irresistible force—inevitable consequence—being necessary—something that is necessary—that which is essentially requisite—the occasion or that which gives rise to something else—great or urgent public convenience." What is a mere luxury, or perhaps entirely useless and burdensome to a savage, may be a matter of necessity to a civilized person. What may have been a mere luxury to a poor man may prove to be a necessity to him after he becomes rich. The law seems to regard that as necessary which the common sense of the country, in its ordinary mode of living and doing its business, regards as necessary.

The needs of our country and its ordinary modes of doing business regard the running of railroad trains on Sunday as necessary, as well as the repair of the rairoad track: Com. *v.* Fields, 4 Pa. C. C. Reps. 434; Com. *v.* Robb, 14 Pa. C. C. Reps. 473; Com. *v.* Bobb, 17 Pa. C. C. Reps. 350. So, also, the running of street cars: Com. *v.* Berks County Prison Warden, 11 Dist. R. 45; Com. *v.* Newcomet, 18 Pa. Superior Ct. 508.

Ice may be sold and delivered on Sunday, and is not within the prohibition of the Act of 1794: Com. *v.* Linaugh, 30 Pa. C. C. Reps. 466.

No doubt but that as far back as 1794 ice was considered as a luxury, if, indeed, it was in use at all; but in these days of growth and advancement, it is considered a necessity, even so much so as to permit of its sale on Sunday. Law, therefore, does not condemn those employments which society regard as necessary, even if they do encroach upon the Sabbath.

The selling of tickets by the agent of a railroad has been held a necessity: Com. *v.* Fuller, 44 Legal Intell. 442. So the tending of a lock in a canal: Murray *v.* Com., 24 Pa. 270. The necessities of the situation are extending and are likely to become larger, not because of less religious feeling in the

4 D. & C.

Commonwealth *v.* Carros.

community, but because the luxuries of the past are the necessities of the present and the future: Com. *v.* Diffenbaugh, 26 Pa. C. C. Reps. 65. And so an employee of a railroad may sweep snow from the platform and the approaches of the depot on Sunday: Com. *v.* Pfahler, 44 Pa. C. C. Reps. 5. And the coaling of a locomotive on Sunday was held lawful: Com. *v.* Conway, 2 Foster, 329. We might cite other examples of what the law regards as necessities under this act were it necessary so to do. No doubt but that our good old forefathers would hold up their hands in holy horror could they see what are regarded as necessities at the present time, but in the growth and development of this country conditions have so changed that customs and the manner of living which were sufficient a hundred years ago are insufficient now. No one would be willing for a moment to relegate to the rear our telegraphy, or our wireless telegraphy, or our telephones, and convey our messages by courier or by mail. The agricultural part of our population would never agree to give up the modern harvesting machinery and go back to cutting their grain with the sickle or the cradle. Neither would our gentlemen of tasty dress consent to go back to homespun as clothing apparel. Our populace in general would greatly deplore the loss of electricity, gas and coal for heating and lighting and fall back to wood and the tallow dip for these purposes. And so with a great number of other conveniences that many years ago would have been classed as supernumerary, now are regarded as necessities. Who would be willing to again travel in the "one horse shay" and give up the automobile? Or what business man would be willing to again take up the quill as an instrument of writing and discard the typewriter? Times have, indeed, changed; manners have changed; customs have changed, and unless we change and steadily move forward with the progress of the nation, we will fall far behind.

There can be no doubt but that ice cream is a food (Com. *v.* Burry, 5 Pa. C. C. Reps. 481), and it is so regarded by the medical profession as well as by the populace in general, and as such it has in recent years especially taken its place in the foremost ranks of the foodstuffs of the country. Many years ago, even not as far back as 1794, a plate of ice cream was a rarity, was very seldom made or eaten, and then only on great and important occasions. The writer very well knows that in his boyhood days it was nearly unheard of, and he who was so fortunate as to obtain a serving of it was regarded by others as one of the select. But, as years have rolled by, we now find it classed as a food and in common use. At this time no meal given for the entertainment of guests is complete without it, and by many it is an article of daily consumption, both at home and in places where it is sold. It was once a luxury, but has now become a necessity, and in many families it is used as frequently as is meat as an article of diet, both on weekday and on Sunday. Its use is universal, so much so that it is now manufactured and prepared by individuals and by companies exclusively engaged in that line of business. Its use as an article of diet is not confined to summer alone, but it is used in winter just as well.

A licensed hotel keeper may sell ice cream and soup, and may furnish ice cream to residents of the town: Com. *v.* Breitinger, 16 Dauphin Co. Reps. 273.

A keeper of a restaurant or eating-house, who sells sandwiches, eggs, bread, butter and coffee on Sunday, does not violate the Act of 1794: Com. *v.* Barnhart, 40 Pa. C. C. Reps. 37.

These are recognized articles of food and so is ice cream. Why be permitted to sell the one and not the other, all being foodstuffs? In the case last cited, Com. *v.* Barnhart, it appears the proprietor also kept a pool-room and a

grocery which were closed on Sunday, but the eating branch of his business was not.

The keeper of a restaurant or eating-house may furnish ice cream to customers on Sunday without violating the Act of April 22, 1794, § 1, 3 Sm. Laws, 177. Ice cream is an article of food and falls under the designation of dressed victuals within the exception of the act: Com. v. Crowell, 21 Dist. R. 116.

And a hotel keeper may sell ice cream on Sunday: Com. v. Bosch, 15 W. N. C. 316; Com. v. Sutman, 11 Pa. Justices' Law Repr. 296. We have herein seen that it may be lawfully sold by a variety of tradesmen. Why distinguish and say to one that he may sell it and to another that he may not sell it? Why say to this defendant that he dare not sell it and permit its sale by restaurants and hotels? One of the great principles on which our nation is founded is the equality of men; but if a certain class are to be permitted to sell this article of food and another class is not, then at least one of the stones in the foundation of our nation has fallen out of place. We must hold that this defendant is lawfully entitled to handle foodstuffs in the same manner and at the same times as other business men.

We at this time deem it no more than proper to inquire as to what is the test of "necessity." The law regards that as necessary which the common sense of the country in its ordinary mode of doing business regards a necessity: Com. v. Robb, 3 Dist. R. 701. By a work of necessity is meant any labor or work which is morally fit or proper to be done on that day under the circumstances of the particular case: Com. v. Fuller, 4 Pa. C. C. Reps. 429; Com. v. Shipley, 35 Pa. C. C. Reps. 132.

A work of necessity does not depend on conditions and situations as they existed in 1794, or fifty or thirty-five years ago, but upon conditions as they exist now: Com. v. Berks County Prison Warden, 11 Dist. R. 45.

We quite agree with the foregoing definitions of "necessity," as we have hereinbefore intimated. No hard and fast definition can be given, but each case must stand upon its own base and must be governed by the peculiar conditions surrounding it.

Passing on to the proviso "that nothing herein contained shall be construed to prohibit the dressing of victuals in private families, bake-houses, lodging-houses, inns and other houses of entertainment for sojourners, travelers and strangers." The dressing of victuals is the preparing of them for consumption (Omit v. Com., 21 Pa. 426; Com. v. Breitinger, 40 Pa. C. C. Reps. 617), such as cooking food, serving it, or preparing it so it can be served. So we hold that serving ice cream to a patron, taking it out of the freezer and preparing it so it can be served to the customer, is embraced under the term "dressing of victuals," as used in the act, for food and victuals and meat, as used in the act, are synonymous terms and include all the articles of food in ordinary use: Com. v. Burry, 5 Pa. C. C. Reps. 481.

The place of business of the defendant cannot be embraced in the terms "private families, bake-houses, lodging-houses or inns." It must, therefore, be embraced in the terms "other houses of entertainment," if embraced at all.

"Entertainment" is defined as the act of furnishing accommodation; refreshment; good cheer; or diversion; the act of providing gratification or diversion; the act of receiving as host or admitting, amusing or cherishing; the receiving and accommodating of guests, either with or without reward; the reception and accommodation of the public who resort to a place; hospitable provision for the wants of a guest; especially provision of a table, a feast; a hospitable repast; hospitable reception; a public reception; a ban-

4 D. & C.

quet; board; a formal or elegant meal. The term has also been applied to a shop where the public are received, sheltered and refreshed:" 20 Corpus Juris, 1267.

"Restaurant" is an establishment for the sale of refreshment, both food and drink; an eating-house; a place where something to eat, ready prepared, or which can be readily prepared, may be obtained; a place where eatables can be obtained at all reasonable hours: 34 Cyc., 1677.

The testimony taken at the hearing before the justice of the peace discloses that this defendant served sandwiches, coffee, cocoa and ice cream, and had candy for sale. Eating-houses and restaurants usually have candy for sale. Under the definitions just given, we have no hesitation in classing the defendant's place of business as a place of entertainment and as coming within the act as "other houses of entertainment," no difference whether it is called a restaurant, an eating-house, a confectionery or what not. It makes no difference whether one is served with a full meal or with a sandwich, a cup of coffee or a plate of ice cream, or either or all, it is entertainment. During these busy days many people use a light lunch for the midday meal, such as a sandwich and a cup of coffee or cocoa, and such a lunch this defendant is prepared to serve and does serve. A glass of milk and a sandwich is often taken for this lunch, or a dish of ice cream and a sandwich, while some may take only the ice cream. So that the defendant's place of business falls within the proviso of "dressing victuals . . . in houses of entertainment."

It may be well to also consider who are embraced under the terms "sojourners, travelers or strangers."

In the case of Com. v. Breitinger, 40 Pa. C. C. Reps. 617, Judge Henderson, in passing upon the same question we have here, says: "The true reading of the proviso is that the prohibition does not extend to "private families, bake-houses (or) lodging-houses, inns and other houses of entertainment for the use of sojourners, &c." The words "for the use of" do not qualify the act or thing done, but the place or places of doing it. The words of the proviso of the Act of 1786 are identical with those of the Act of 1794, except that the disjunctive "or," omitted in the latter act, immediately precedes, in the former act, lodging-houses, clearly indicating the construction suggested and the meaning attached to those words. And it is apparent that the omission of the disjunctive does not change, modify or control the intent of the proviso. The construction contended for on the part of the Commonwealth would give a license to private families, bake-houses and "all houses of entertainment" to open their doors on Sunday for the use of sojourners, travelers and strangers, and shut them upon all citizens, although their demands for public accommodation might be just as imperative and far more legitimate. It would write over the doors of our hotels (and restaurants and eating-houses), "This is Sunday; strangers but not citizens may enter." This is reductio ad absurdum. The distinction is odious.

In the case of Com. v. Crowell, 21 Dist. R. 116, Judge Savidge says: "It has been held by good authority that the words 'for the use of sojourners,' &c., qualify 'not the act or thing done, but only the place or places of doing it.' Hence, it makes no difference that the persons served lived in Northumberland (the case arising in that town), inasmuch as the eating-house was for the entertainment of 'sojourners, travelers and strangers.' "

The Sabbath day was set apart by the Creator of the Universe as a sacred memorial of the completion of the work of creation. Its religious observance is binding on all Christians, and unquestioned history accords the full measure of wisdom to the teachings of morality and Christianity. It is a part of the

common law of Pennsylvania, and our statute law is founded upon this great creed. The statute makes it unlawful to do or perform any worldly employment or business whatsoever on Sunday except as therein provided. The alleged offence of which this defendant is convicted is within the letter of the proviso, and the statute does not condemn him.

"Guiltless before the civil law, by the divine law, as such merely, we have no authority to judge him."

We have great respect and veneration for the Sabbath, as well as for religious things, and it is our desire to see the sanctity of the Sabbath day maintained. In rendering this opinion, we are not legislating. We are explaining the law as we see it. We have no apologies to offer. We are doing in this case as we have heretofore attempted to do, and as we intend to hereafter always attempt to do, viz., to do our duty as we see it without fear or favor.

And now, to wit, Aug. 10, 1923, the conviction of the defendant on the charge of selling ice cream on Sunday in violation of the Act of 1794 is reversed.                     From Charles P. Ulrich, Selins Grove, Pa.